******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JASON ANDERSON
(AC 35432)

Keller, Prescott and Schaller, Js.

*Argued October 16, 2014—officially released June 30, 2015*

(Appeal from Superior Court, judicial district of
Ansonia-Milford, Markle, J.)

*Daniel P. Scholfield*, with whom was *Hugh F. Keefe*,
for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with
whom, on the brief, was *Kevin D. Lawlor*, state's attor-
ney, for the appellee (state).

*Opinion*

PRESCOTT, J. This criminal prosecution arises out of a fatal motor vehicle accident. The defendant, Jason Anderson, appeals from the judgment of conviction, rendered following a jury trial, of two counts of misconduct with a motor vehicle in violation of General Statutes § 53a-57[1] and reckless driving in violation of General Statutes § 14-222. The defendant claims that the trial court improperly (1) declined to direct a judgment of acquittal on certain counts of the information in light of the jury's answer to an interrogatory, which answer was inconsistent with the jury's verdicts of guilty with respect to those counts; (2) vacated the jury's verdicts and ordered the jury to resume deliberations; and (3) coerced or misled the jury into returning guilty verdicts after it had resumed its deliberations.[2] Because we agree in part with the defendant's second and third claims, we reverse in part the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 2 a.m. on June 12, 2009, the defendant, an on-duty Milford police officer, was returning from West Haven, where he and other officers had earlier been dispatched to provide assistance to the West Haven Police Department in dealing with a public disturbance. On his return to Milford, the defendant drove his cruiser westbound on the Boston Post Road in Orange at an extremely high rate of speed, despite the fact that he was not responding to any calls for assistance, and neither his emergency lights nor siren was activated. Although the posted speed limit was forty miles per hour, the defendant's speed on the Boston Post Road at times exceeded ninety miles per hour.

As the defendant approached the intersection of Boston Post Road and Dogwood Road in Orange, a Mazda driven by David Servin and also occupied by Ashlie Krakowski approached the same intersection from the opposite direction. Both Servin and Krakowski were nineteen years of age. Servin was intoxicated, and his blood alcohol level was 0.14 percent. Without coming to a complete stop at the flashing red traffic signal at the intersection or yielding to oncoming traffic, Servin then attempted to turn left onto Dogwood Road in front of the defendant's cruiser. Although the defendant applied his brakes approximately one second before the vehicles collided, the defendant's cruiser struck the Mazda at a high rate of speed in the right front passenger door. The impact caused the Mazda to roll over, and Krakowski was ejected from the vehicle. The defendant's cruiser also sustained extensive damage.

Both Servin and Krakowski died as a result of their injuries sustained in the collision. The defendant was injured, taken by ambulance to a hospital, and released

later that morning.

The defendant subsequently was charged in an information with two counts of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1)[3] in connection with the deaths of Servin and Krakowski, and one count of reckless driving in violation of § 14-222. Counts one and two pertained to the deaths of Servin and Krakowski, respectively. Following a jury trial, the jury unanimously found the defendant not guilty of both counts of manslaughter in the second degree, guilty of two counts of the lesser included offense of misconduct with a motor vehicle, and guilty of reckless driving.

The issues raised by the defendant in this appeal arise from a series of events that occurred primarily after the jury began deliberations. We, therefore, set forth the procedural history related to the jury deliberations in detail.

Prior to the commencement of jury deliberations, the court asked both parties whether they intended to request any interrogatories and gave them until the next day to submit any proposals. The following day, the defendant submitted a proposed interrogatory. The proposed interrogatory asked: "Did the conduct of [Servin] constitute an intervening cause of the automobile collision?" The interrogatory included an option for the jury to check either "yes" or "no." After accepting the interrogatory without objection, the court instructed the jury.

As to counts one and two, the court instructed the jury on the elements of manslaughter in the second degree and the lesser included offenses of misconduct with a motor vehicle and negligent homicide with a motor vehicle. The court stated: "As to the first lesser included offense of misconduct with a motor vehicle; again, I emphasize, if you unanimously find the defendant not guilty of the crime of manslaughter in the second degree in both count one and count two, you shall then go to consider the lesser offense of misconduct with a motor vehicle in violation of § 53a-57. . . . If . . . you have unanimously found the defendant not guilty of the crime of misconduct with a motor vehicle, then you should go on to the next step and consider the lesser offense of negligent homicide with a motor vehicle, in violation of General Statutes § 14-222a. Do not consider this offense unless and until you have unanimously found the defendant not guilty of misconduct with a motor vehicle."

The court then instructed the jury on the elements of each offense. Additionally, the court discussed the doctrine of intervening cause and instructed the jury to apply it to counts one and two, including each lesser included charge it was to consider. Specifically, the court charged the jury as follows: "The defendant, Jason

Anderson, claims that his conduct was not the proximate cause of [Servin's] or [Krakowski's] deaths because his acts did not set in operation the factors which caused the deaths. The defendant claims that the acts of [Servin], by his operating the motor vehicle with a blood alcohol level of 0.14 [percent] and by failing to stop at the blinking red light and by failing to yield the right-of-way to oncoming vehicles, constitutes an intervening cause which caused the death of both [Servin] and [Krakowski]. Now, this is a question of fact for you, as jurors, to determine. If you find that the state has not proven that it was the defendant's acts which set in operation the factors that caused the death, then you cannot find the defendant guilty. If you find that it was the acts of others which have actually set in operation the factors which caused the death in this case, you must find these acts to be an intervening cause. If you determine that an intervening cause exists and caused the death in the case, then the defendant's conduct, reckless or not, cannot legally be the proximate cause of [Servin's] or [Krakowski's] death."

At the conclusion of the jury instructions, the court stated: "[T]here is one other matter I almost forgot," referring to the interrogatory submitted by the defendant. The court failed to explain the content or purpose of the interrogatory, or how it related to the court's instructions regarding the substantive offenses. The court simply instructed the jury as follows: "It's going to be marked as a court exhibit, and it's labeled as an interrogatory. The foreperson, on behalf of the jurors, will answer this one question before coming out and returning the verdict. You'll fold that interrogatory in half, hand it to the marshal and the marshal will hand it to the clerk, all right. So, there will be one question which calls for a yes or no answer, all right." Jury deliberations began shortly thereafter. The court did not instruct the jury that its answer to the interrogatory must be unanimous. It also did not explain, with respect to the interrogatory, that the state had the burden to prove beyond a reasonable doubt that Servin's conduct was not an intervening cause.

A short time after commencing deliberations, the jury sent a note to the court asking whether the issue of intervening cause was applicable only to the charge of manslaughter in the second degree in counts one and two, or if it also was to be considered in conjunction with the lesser included charges of misconduct with a motor vehicle and negligent homicide with a motor vehicle. The court referred the jury to two pages of its instructions. That portion of the instructions stated that intervening cause was to be applied to counts one and two, including each lesser included offense. The jury then returned to its deliberations.

Sometime thereafter, the jury sent a second note to the court stating that it had reached a verdict. The

jury returned to the courtroom and the verdicts were announced by the foreperson. As to counts one and two, pertaining to the respective deaths of Servin and Krakowski, the jury found the defendant not guilty of both counts of manslaughter in the second degree. As to the death of Servin (count one), the jury found the defendant not guilty of misconduct with a motor vehicle, but guilty of the lesser included offense of negligent homicide. As to the death of Krakowski (count two), the jury found the defendant guilty of misconduct with a motor vehicle. With respect to count three, the jury found the defendant guilty of reckless driving. The court then accepted and recorded the verdicts. The court did not, at this time, review the jury's answer to the interrogatory or make any inquiries of the jury with respect to it.

The court asked the jury to return to the deliberation room. After the jury left the courtroom, the court then reviewed the answer to the interrogatory and stated: "Counsel, the interrogatory came back and the question was, did the conduct of [Servin] constitute an intervening cause of the automobile collision, and the answer was yes." The court noted a perceived conflict between the guilty verdicts and the answer to the interrogatory: the guilty verdicts and answer to the interrogatory appeared to simultaneously find the defendant guilty on the lesser included charges in counts one and two and relieve him of criminal responsibility on those same charges.

The defendant requested that the court vacate the guilty verdicts on the lesser included charges as to count one and two because those verdicts were inconsistent with the jury's answer to the interrogatory, and render a judgment of acquittal on those charges. In response, the state asked that the jury be reinstructed and have the opportunity to resolve the inconsistency. After discussing these issues, the court stated that it was inclined to vacate its order accepting the verdicts, reinstruct the jury, and send the jury back for further deliberations on all counts. Specifically, the court stated: "Because the court is concerned with the inconsistency in a very basic legal principle of causation and intervening cause, the court feels that it is obligated to, at this point, vacate my order accepting the verdict, and I will do that at this point in time. I am going to vacate the acceptance of that verdict. The court has decided that it is going to reinstruct the jurors as to both the causation issue and the instruction on intervening cause, and, second, as to the inconsistency that applied between count one and two finding a different mental state of the defendant in each of those charges. So, those are my intentions. I have given each side, the state and [defense counsel], a copy of the proposed instruction. I have made some minor changes, and I'll say minor. I'll hear from both sides, first from the state."[4]

The state agreed with the court's position.[5] The defendant objected to the court's intended plan. Specifically, he requested that the court vacate the guilty verdicts and render a judgment of acquittal on those charges. The defendant further argued that reinstructing the jury as to intervening cause would implicitly convey to the jury that it must have made a mistake and that it could rectify the mistake by simply changing its interrogatory answer from "yes" to "no." The defendant argued that such a course would be highly prejudicial and, therefore, renewed his oral motion to vacate the guilty verdicts because of the inconsistency of the answer to the interrogatory relative to the guilty verdicts, and asked that the court render judgment of acquittal as to the guilty verdicts on the lesser included charges in counts one and two.

The court ultimately denied the motion, stating: "I am going to deny that because of the reason that this case went to the jurors. I feel that there is an inconsistency, but the jurors should render a decision. I am not sure if they just do not understand the legal principle, as I explained it to them. But certainly it is within the province of the jury to have an opportunity to correct and to convey to us their intentions in this case. So, I am very reluctant to just cast aside the jurors' verdict in their place. I think they should be given the opportunity to explain to the court and to the parties what their intentions were. As I said, if their intentions were to find that [Servin], his actions, his conduct, constituted an intervening cause of the automobile collision, then in fact that finding would relieve the defendant of all of the criminal offenses. That may be what they wish to do, but the way they have rendered this verdict is legally inconsistent, and I can't—I am not just going to set aside their verdict without them having a full understanding. I believe the best way to address that is to reinstruct them as to the principles of the law so that they can render that decision."

The court then reinstructed the jury and premised its reinstruction on the basis of its determination that the jury's verdict "[was] inconsistent with the applicable legal principles," and therefore could not be accepted by the court. The court first reinstructed the jury on the doctrine of intervening cause, providing a definition and articulating the practical implications of a yes or no answer to the interrogatory. It stated: "[T]he answer, yes, to the interrogatory means that the intervening cause has relieved the defendant of criminal responsibility, and you must find the defendant not guilty as to counts one and two of the information, and to its lesser included offenses. . . . [I]f you have found that the conduct of [Servin] does not constitute an intervening cause of the accident, only then may you go on to consider the verdict of guilty to the charges and also to the lesser included offenses that were outlined in

counts one and two."

The court next turned its attention to the second articulated inconsistency, pertaining to the inconsistent mental states required to convict the defendant of the lesser included offenses contained within counts one and two. The court stated: "[I]t is inconsistent to find the defendant guilty of criminal negligence in count one and find misconduct with a motor vehicle in count two because those statutes require that you make a different finding as to the defendant's mental state at the time of his actions." In addition, the court outlined the two mental states and the requirements of each: "Criminal negligence requires you to find the defendant failed to use or exercise reasonable care under the circumstances. The misconduct with a motor vehicle statute defines the mental state as failing to perceive a substantial and justifiable risk that will occur."

Following the reinstruction, the court stated, "I hope this helps to clarify some of the inconsistencies that has led this court not to accept your verdict. Therefore, and simply once again, the court will not invade in your findings of facts. However, it is very important that the jury interrogatory as to causation is consistent with the ultimate verdict." The jury resumed its deliberations. Sometime thereafter, the jury sent a note to the court stating that "it could not and will not be able to" reach a verdict as to counts one and two. In response, the court delivered a Chip Smith instruction on the need to deliberate further. See *State* v. *O'Neil*, 261 Conn. 49, 74, 801 A.2d 730 (2002).

The jury resumed deliberations and later sent another note asking if it could "rescind" its earlier answer to the interrogatory, which stated that Servin's conduct was an intervening cause in the accident. Over objection from defense counsel, the court determined that the jury had not yet answered the interrogatory and, thus, would need to resume deliberations. Accordingly, the court reasoned that there was nothing to rescind.[6] The court referred the jury back to the prior reinstruction and asked it to return to its deliberations and answer the interrogatory question.

Shortly thereafter, the jury sent another note to the court. This note read: "Your Honor, [w]ith all due respect, we, the jurors, still remain in agreement with the interrogatory statement that [Servin's] actions *contributed* to the accident. Our question remains if there is a distinction between the accident and the deaths." (Emphasis added.) Outside of the presence of the jury, the court noted to counsel that the jury used the phrase "contributed to" rather than "intervening cause," and that the court did not understand the second portion of the note. The court indicated that it would attempt to answer this note the following day.

The following day, over objection from defense coun-

sel, the court stated that it intended to resubmit the interrogatory to the jury: "I will say this to both counsel, that it is clear that when they sent out the note yesterday they used an incorrect legal term. What they meant I cannot infer, and that is the reason why I am resubmitting the jury interrogatory because it has the correct legal term of whether or not they find an intervening cause. So, in light of the term that they used, contributing factor, it has to be clarified, and that is the purpose that the court is going to resubmit the interrogatory, just so the record is clear. And once they have answered that interrogatory, and since I had already reinstructed them as to the law, I am giving them the opportunity to render a verdict. If they are able to render a legally consistent verdict, this court is bound by that verdict. If it is not consistent, then this court is going to be bound by the factual findings, all right."[7]

The court then, in the presence of the jury, gave the following instruction: "So, as I indicated, in the first part of your note you indicated that you had come to a finding regarding [Servin's] conduct. Now, at this point in time the court is going to resubmit to you the jury interrogatory. It is being resubmitted to you solely for the purpose that your finding be recorded in writing, whatever it may be. Now, also I want to indicate to you—and I've instructed you on this on prior occasions, and let me emphasize this to you once again. You are the sole finders of fact and that it is only my role to instruct you as to the law you are to apply to the case. And because you are the sole finders of fact, you should not be influenced by my reinstructions or the resubmission of the interrogatory to you, and you should not interpret it as any indication of an opinion as to how you should determine the issues of fact. That is for you alone to decide and, as I indicated, the purpose is to have this recorded in writing on the interrogatory form. After you answer this interrogatory, then you should consider my recent instructions to you, and if you are able to render a verdict as to counts one and two, you should send out a note indicating that you are able. If you hand a note to the marshal—as I say, if you want to resubmit to the first question, you may also do that. Once you are able to answer the interrogatory and let the marshal know if you are able to reach a verdict or not, then I'll call you back and we'll read the interrogatory in open court and a verdict, if you shall have that, all right."

Following its return to deliberations, the jury sent another note stating: "[1] The jurors would like a copy of the transcripts of [the court's] comments and instruction to the jurors with regard to inconsistency of the verdicts given by the jurors dated 11/6/12. [2] We would like a copy of the original interrogatory statement completed by the jurors because it appears that it is worded differently. [3] The reason we raised the question 'was there any distinction between the accident and the

deaths' is, and based on testimonies, because SOME of us jurors believe that [Servin's] actions contributed to the accident but their deaths are caused by the speed." (Emphasis in original.) The court ordered that the requested transcripts and original interrogatory be submitted to the jury, and reinstructed the jury regarding the court's limited role in juror deliberations as follows: "I want to emphasize again that the law that I have given you is what the court's duty is to do, provide you with the applicable law. So, that applicable law you must find to the facts of the case. Whatever you as jurors find the facts to be, that is for you alone to decide, all right. So, you find the facts, you take the law as I have given it to you on the jury charge, and you take only that law. That is the applicable law and you apply it." The court did not provide the jury with any instructions regarding whether there was a legally significant distinction between the accident and the deaths.

Following additional deliberations, the jury sent a note to the court indicating that it had reached a unanimous verdict. The interrogatory was read first:

"The Clerk: Jury interrogatory. Did the conduct of [Servin] constitute an intervening cause of the automobile collision? Do you want me to read their answer, Your Honor?

"The Court: Yes, please.

"The Clerk: No. Signed, the foreperson . . . ."

The foreperson then announced the verdicts. The jury unanimously found the defendant not guilty of manslaughter in the second degree as to both counts one and two. The jury found the defendant guilty of misconduct with a motor vehicle in violation of § 53a-57 on both counts one and two, as they pertained to the respective deaths of Servin and Krakowski. The court accepted and recorded these verdicts. The court also stated that it would "accept the previously rendered verdict of guilty on count three [reckless driving], and that verdict shall be accepted and recorded at this time."[8] The jury was polled and the verdicts were determined to be unanimous.

After the jury was excused, the defendant made an oral motion, pursuant to Practice Book § 42-51, for a judgment of acquittal. The defendant argued that the jury had been pressured to change its interrogatory answer by the instructions given by the court and that double jeopardy had attached after the jury had returned its initial verdicts.[9] The state maintained that the initial verdict was inherently flawed and that further deliberation had been necessary. The court denied the defendant's motion and stated: "Well, first and foremost, I'm going to deny your motion to enter a judgment of acquittal and to set aside the verdict for the following reasons: One, the factual basis here was one of which the jurors could not have legally rendered a verdict the

first time around. It was a legally inconsistent verdict with their findings. The court, giving great deference to the jurors who sat here, listened to the evidence, was assigned with the duties that jurors must to make certain finding of fact, to weigh the credibility of the witnesses. There is deference to the jurors to do their job and for the court not to interfere with their fact-finding process. However, when they returned the verdict which was legally inconsistent with their factual findings, this court had a duty to uphold the law and also a duty to honor the findings. So, it was very clear that it was a clarification that was needed to be given to the jurors, at which time I reinstructed them, the same instruction that was given out of the same instruction package out of the jury charge as to the meaning of intervening cause. I think that in their questions they clearly indicated to the court that they did not have a clear understanding of the legal implication of the intervening cause; otherwise, they could not have reached that inconsistent verdict. So, for the record, the court did not accept that verdict, that's all. The court just could not accept a finding that was legally inconsistent, reinstructed them as to the law, and sent them back to perform their duties. At this point in time, the court now finds that their findings are consistent after they've had an opportunity to re-review the jury instruction, re-review my instruction to them, and to consider the evidence in the case. So, the court is going to do what it needs to do, which is to make sure that the jurors' intent is preserved and also honored, and it is my duty to be bound by the findings, factual findings, submitted by the jurors. And those are my reasons, once again, that the verdict was not accepted the first time around, and it was only accepted by the court upon a return of a consistent verdict with the law." Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly declined to direct a judgment of acquittal on counts one and two of the information and ordered the jury to resume its deliberations, despite the fact that the jury's answer to the interrogatory was inconsistent with the jury's verdict of guilty on certain lesser included offenses contained in those counts. Specifically, the defendant argues that because the affirmative answer to the interrogatory regarding intervening cause appeared to relieve him of criminal responsibility as to counts one and two, it should be deemed an acquittal as a matter of law and should have prevailed over the guilty verdicts on the lesser included offenses under those counts.[10] Accordingly, the defendant argues that the correct course of action would have been to discharge the jury and then direct judgments of acquittal on both counts one and two. We are not persuaded.

A

Because some types of inconsistent verdicts are legally permissible, the defendant's claim necessarily requires us to first discuss whether our case law on inconsistent verdicts required the court to accept the verdicts as initially returned by the jury and, thus, prevented the court from ordering the jury to resume its deliberations to eliminate any inconsistency between the verdicts and the interrogatory. This case law is generally divided into two categories.

The first category involves cases in which it is claimed that two *convictions* are inconsistent with each other as a matter of law or are based on a legal impossibility. See, e.g., *State* v. *Nash*, 316 Conn. 651, 659,        A.3d        (2015). Such convictions, commonly referred to as "mutually exclusive convictions," are reviewable, and cannot withstand a challenge if "the existence of the essential elements for one offense negates the existence of [one or more] essential elements for another offense of which the defendant also stands convicted." (Internal quotation marks omitted.) Id. The present case does not involve such a claim.[11]

The second category involves cases in which the defendant claims that one or more guilty verdicts must be vacated because there is an inconsistency between those guilty verdicts and a verdict of *acquittal* on one or more counts, or an acquittal of a codefendant. See, e.g., *State* v. *Arroyo*, 292 Conn. 558, 586, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010); *State* v. *Rosado*, 178 Conn. 704, 705, 425 A.2d 108 (1979) (conviction of sale of narcotics, acquittal of possession of narcotics); *State* v. *Keating*, 151 Conn. 592, 593–94, 200 A.2d 724 (1964) (after two defendants were convicted of conspiracy and one was acquitted, appealing defendants claimed that their convictions were inconsistent with acquittal of their codefendant), cert. denied sub nom. *Joseph* v. *Connecticut*, 379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557 (1965). It is well established that such inconsistent verdicts are not reviewable and the defendant is not entitled to relief because "[when] the verdict could have been the result of compromise or mistake, we will not probe into the logic or reasoning of the jury's deliberations or open the door to interminable speculation." (Internal quotation marks omitted.) *State* v. *Hinton*, 227 Conn. 301, 313, 630 A.2d 593 (1993).

Our Supreme Court has further reasoned that inconsistent verdicts of this type "should not necessarily be interpreted as a windfall to the [g]overnment at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion [of guilt] on [one charge], and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on another offense. But in such situations the [g]overnment has no recourse if it wishes to correct the jury's error; the [g]overnment is precluded from appealing or

otherwise upsetting such an acquittal by the [c]onstitution's [d]ouble [j]eopardy [c]lause. . . .

"[A]n individualized assessment of the reason for the inconsistency would be based either upon pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake. . . . [A] criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Arroyo*, supra, 292 Conn. 585.

The present case does not fit into this category either. Instead, the jury's initial answer to the interrogatory creates a possible inconsistency with respect to each guilty verdict without reference to any other count on which the defendant may have been convicted or acquitted. In other words, as to each count, the jury seemingly both convicted and acquitted the defendant. By finding him guilty either of misconduct with a motor vehicle or criminally negligent homicide, it must have concluded that the defendant proximately caused the death of Servin and Krakowski, and yet, the jury simultaneously found, as expressed in the answer to the interrogatory, that the defendant was *not* the proximate cause of the collision because Servin's conduct was an intervening cause. This apparent inconsistency does not require any comparison of the jury's verdict on different counts but instead seemingly creates an internal inconsistency with respect to the jury's guilty verdict on any particular charge. Thus, the principles discussed in *Arroyo* that underlie a court's unwillingness to review claims of inconsistent verdicts and instead "let the chips fall where they may" do not pertain to the present case because we, in fact, are left not knowing whether the defendant was convicted or acquitted on any of the charges for which the jury returned a verdict of guilty. Accordingly, we conclude that our case law on inconsistent verdicts is not dispositive of the defendant's claim and does not prevent further consideration by the court as to how to resolve the apparent inconsistency.

B

The issue whether, in a criminal case, a factual finding expressed by a jury in an answer to an interrogatory that relieves a defendant of criminal responsibility trumps an inconsistent guilty verdict on one or more of the charges is a question of first impression in this state. The dearth of authority in Connecticut on this issue is unsurprising because, as a general rule, jury interrogatories have not been part of our criminal procedure. See *State* v. *Sitaras*, 106 Conn. App. 493, 501, 942 A.2d 1071, cert. denied, 287 Conn. 906, 950 A.2d 1283 (2008); see also *State* v. *Anonymous (1971-3)*, 6 Conn. Cir. Ct. 393, 397, 275 A.2d 629 (1971) (the use of interrogatories "is not appropriate in criminal jury trials" and

"[i]t is the duty of a jury to return a general verdict in a criminal trial"). Nevertheless, interrogatories have sometimes been used in criminal cases in Connecticut and may well be appropriate or required[12] in certain limited contexts, such as when the jury is required to find certain facts, which are not otherwise an element of the offense, before a sentence may be enhanced. In this case, however, neither party asserts that the use of an interrogatory in the circumstances of this case was improper. We, therefore, leave to another day the question of whether a jury interrogatory is appropriate in this or related contexts.[13]

To determine whether the court was required to render a judgment of acquittal on the basis of an inconsistency between the answer to the interrogatory and the guilty verdicts, we look to established double jeopardy principles and to guidance from other jurisdictions in answering this thorny, and rarely decided, question. The fifth amendment to the United States constitution provides in relevant part: "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." "We have recognized that the Double Jeopardy Clause consists of several protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple prosecutions for the same offense." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 294, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). The United States Supreme Court has held that "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that [a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution." (Internal quotation marks omitted.) *United States* v. *Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S. Ct. 1349, 51 L. Ed. 2d 642 (1977). "A judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by a reversal." *United States* v. *Scott*, 437 U.S. 82, 91, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978).

Most of the reported cases involving this species of double jeopardy law focus on the nature and timing of the actions by the trial court in granting a motion for a judgment of acquittal, either in cases tried to the court or in circumstances in which the jury is deadlocked. In these cases, the United States Supreme Court has "emphasized that what constitutes an acquittal is not to be controlled by the form of the judge's action." (Internal quotation marks omitted.) *United States* v. *Martin Linen Supply Co.*, supra, 430 U.S. 571. Rather, "[a]n acquittal results from a resolution, correct or not,

of some or all of the factual elements of the offense charged . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Paolella*, 210 Conn. 110, 122–23, 554 A.2d 702 (1989), quoting *United States* v. *Martin Linen Supply Co.*, supra, 571.

The present case requires this court to analyze, not the actions of the trial court, but, rather, the jury's answer to the interrogatory and determine whether it should be deemed an acquittal because it represents a resolution adverse to the state of some or all of the factual elements of the offense charged. We now turn to the reported cases that have addressed this question in the context of an inconsistency between a jury's answer to an interrogatory and guilty verdict on one or more counts of an information or indictment.

The state directs our attention to the decision by the United States Court of Appeals for the Tenth Circuit in *United States* v. *Shippley*, 690 F.3d 1192 (10th Cir. 2012), cert. denied,      U.S.      , 133 S. Ct. 901, 184 L. Ed. 2d 698 (2013). In *Shippley*, the defendant was charged with various drug offenses in connection with his participation in a motorcycle gang. Id., 1193. The jury returned a verdict finding the defendant guilty of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 but, in response to the District Court's special interrogatories, found that the defendant had *not* conspired to distribute any of the drugs listed in the indictment. Id. Thus, as the Tenth Circuit noted, the jury "[i]n effect . . . both convicted and acquitted [the defendant] of the charged conspiracy." (Emphasis omitted.) Id.

On appeal, the defendant in *Shippley* argued that pursuant to *United States* v. *Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984),[14] and *United States* v. *Dotterweich*, 320 U.S. 277, 64 S. Ct. 134, 88 L. Ed. 48 (1943),[15] the District Court should have rendered a judgment of acquittal. *United States* v. *Shippley*, supra, 690 F.3d 1194. The Circuit Court in *Shippley* affirmed the District Court and rejected the defendant's reliance on this reasoning and stated that, "[e]ven accepting for argument's sake [the defendant's] premise that *Powell* and *Dotterweich* implicitly require (rather than permit, as they hold) a district court to accept a verdict logically inconsistent as between counts or defendants, that still does not speak to our case. In our case, it wasn't just logically incongruous to enter the jury's verdict, it was metaphysically impossible. *Powell* and *Dotterweich* involved logical inconsistencies *between counts* and *between defendants*. However illogical, the verdicts in those cases could be given full effect. *This case, by contrast, involves an inconsistency on the same count with the same defendant—an inconsistency that simply could not have been given full effect.* Something had to give in our case that didn't have to give in these other cases. To enter an acquittal, the district court

would have needed to disregard the fact that the jury expressly found [the defendant] guilty. To enter a guilty verdict, the court would have needed to overlook the special verdict findings that [the defendant] did not conspire to distribute any of the drugs at issue in the case. . . .

"If anything, *Powell* might even suggest the opposite conclusion. The [c]ourt in *Powell* refused to undo the defendant's conviction on a compound offense despite his acquittal on the underlying felony because it was unclear whose ox ha[d] been gored: the jury's inconsistent verdict may have favored the government, but it was equally possible it benefitted the defendant. . . . That same sort of problem exists here. *To enter any verdict when the jury first returned, the district court would have had to choose to 'gore' one side or the other—just what Powell suggests courts should not do.*" (Citation omitted; emphasis altered; internal quotation marks omitted.) Id., 1195–96. The court in *Shippley* explicitly limited its decision to instances "where a jury returns a guilty verdict but indicates in its answers to special interrogatories that the defendant is innocent." Id., 1196.

Although the logic of *Shippley* is appealing on its face, we decline to follow it for the following reason. The court in *Shippley* explicitly recognized that it "d[id] not purport to address other arguments, possibly emanating from the [d]ouble [j]eopardy [c]lause or otherwise, [the defendant] doesn't raise." Id. In the absence of a controlling legal principle, such as double jeopardy, the court in *Shippley* simply could not find any principled justification for choosing to gore one party's ox over the other's. In the present case, however, the state concedes that the defendant properly raised a double jeopardy claim at trial and, thus, *Shippley* does not answer whether double jeopardy principles required the court to gore the state's ox in these circumstances.[16]

Although not cited by either the state or the defendant in this case, we find the decision of the United States Court of Appeals for the Eighth Circuit in *United States* v. *Mitchell*, 476 F.3d 539 (8th Cir. 2007), and the decision of the United States Court of Appeals for the First Circuit in *United States* v. *Fernandez*, 722 F.3d 1 (1st Cir. 2013), to be much more instructive. In *Mitchell*, the defendant was charged with two counts of bankruptcy fraud arising from his filing of a bankruptcy petition. *United States* v. *Mitchell*, supra, 541. The United States District Court for the Northern District of Iowa charged the jury on the substantive criminal law that applied to each count, including that, in order to be found guilty on the second count, the government must establish beyond a reasonable doubt that any false statements made by the defendant regarding his petition were "material," that is, the statements "had a natural tendency to influence, or were capable of influencing the

outcome of the bankruptcy petition." (Internal quotation marks omitted.) Id., 542. The District Court also submitted to the jury a series of interrogatories related to each count, including one that specifically asked the jury if it "unanimously [found] beyond a reasonable doubt that one or more of the [statements] were material . . . ." (Internal quotation marks omitted.) Id. The jury was asked to check "yes" or "no" in response to this interrogatory. (Internal quotation marks omitted.) Id.

The jury returned a verdict of guilty as to each count, but checked the "no" box to this interrogatory, indicating "that it could not make a unanimous finding beyond a reasonable doubt that one or more of the false statements [were] material." Id. The defendant subsequently moved for a judgment of acquittal or, in the alternative, a new trial. Id., 542–43. The District Court vacated the guilty verdict on the second count, concluding that because "the jury had convicted [the defendant] of violating [the Bankruptcy Code provision] without finding any materiality . . . the jury's verdict . . . cannot stand," and ordered a new trial. (Internal quotation marks omitted.) Id., 543. The defendant then moved to dismiss the charge on double jeopardy grounds, but the District Court denied that motion. Id.

On appeal, the defendant argued that double jeopardy barred the government from continuing to prosecute this charge because, in essence, the jury's answer to the interrogatory constituted a factual finding made beyond a reasonable doubt that was fatal to the government's case. Although the Eighth Circuit essentially agreed with the defendant's assertion that the double jeopardy clause applies not only to verdicts of acquittal but also to "final [adverse] adjudications of fully litigated legal issues"; id., 544; it refused to accord the jury's answer to the interrogatory the legal significance urged by the defendant. Id., 544–45.

In rejecting the defendant's double jeopardy claim, the court began its analysis by emphasizing that "[t]he burden is on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided" previously by the jury. (Internal quotation marks omitted.) Id., 544, citing *Dowling* v. *United States*, 493 U.S. 342, 350, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990). The court then considered the precise wording of the interrogatory and reasoned: "The response to the interrogatory does not suggest that the jury made a unanimous factual finding with respect to the materiality of the misstatements. The finding means one of two things: either (1) the jury unanimously found the statements immaterial, or (2) some jurors found the statements material and some jurors found the statements immaterial. In the former case, jeopardy would attach, and in the latter case jeopardy would not attach. The language of the interrogatory itself is not susceptible to discerning just what, specifically, the jury found;

we know merely that it was unable to unanimously agree beyond a reasonable doubt that the statements were material. There is nothing in the language that suggests the jury has found beyond a reasonable doubt that the statements were immaterial." *United States* v. *Mitchell*, supra, 476 F.3d 545. Accordingly, the Eighth Circuit Court of Appeals concluded that the defendant had failed to meet his burden to demonstrate that jeopardy attached and affirmed the District Court's denial of his motion to dismiss the indictment. Id.

We next turn to the First Circuit's decision in *United States* v. *Fernandez*, supra, 722 F.3d 1. *Fernandez* involved two defendants, Juan Bravo Fernandez (Bravo) and Hector Martinez Maldonado. Bravo was found guilty by a jury of (1) conspiracy to travel in interstate commerce in aid of racketeering (count one), and (2) interstate travel in aid of racketeering with the intent to promote bribery in violation of Puerto Rico law (count two).[17] Id., 7. With respect to count one, the government had alleged that Bravo had conspired to commit two separate offenses: bribery in violation of 18 U.S.C. § 666 (federal bribery) and traveling in interstate commerce in violation of 18 U.S.C. § 1952 (Travel Act). Id. In a special finding with respect to count one, the jury rejected the federal bribery offense as an object of the conspiracy and found that he had conspired only to travel in interstate commerce "in aid of racketeering . . . ." Id. The only "racketeering" conduct alleged by the government was bribery in violation of federal and Puerto Rico laws. Id. The jurors had not been asked to specify the unlawful purpose of the travel. Id., 29.

With respect to count two, the substantive Travel Act offense, the jury found Bravo guilty of traveling in interstate commerce with the intent to commit bribery in violation of Puerto Rico bribery law, but found that he did not violate the Travel Act with the intent to commit federal bribery in violation of 18 U.S.C. § 666. Id. "Thus, in both the context of identifying the object of the alleged conspiracy (§ 666 bribery or Travel Act) and in the context of choosing the unlawful activity that was the target of the Travel Act (§ 666 bribery or bribery under Puerto Rico law), the jury rejected the allegation that Bravo's conduct implicated the federal bribery statute." Id.

The double jeopardy issues in *Fernandez* came to the fore because the District Court had granted Bravo's posttrial motion for a judgment of acquittal as to count two, the substantive Travel Act offense, on the ground that "the repeal of the Puerto Rico bribery laws before the trip took place made it impossible for Bravo" to have engaged in conduct that violated one of the elements of the offense. Id., 7. Accordingly, because the District Court rejected, as a matter of law, a violation of Puerto Rico law as a basis for the Travel Act offense, and the jury factually rejected federal bribery law as a basis of

that offense, the defendant was entitled to a judgment of acquittal on count two.

Bravo also moved on double jeopardy grounds for a judgment of acquittal as to count one, the conspiracy offense. Id., 29. "His theory was as follows: if the only target of the Travel Act found by the jury when considering the substantive Travel Act charge (count two) was to further a violation of the Puerto Rico statutes, and that targeted activity was not unlawful, there could be no unlawful *conspiracy* to violate the Travel Act. In other words, he argued that the conspiracy count must be dismissed because the jury verdicts rejecting 18 U.S.C. § 666 as an object of the conspiracy and as a predicate for the *substantive* Travel Act charge left only the repealed Puerto Rico bribery laws as the crime the jury could have found as the racketeering activity alleged to be the target of the Travel Act conspiracy. In that circumstance, there was no viable predicate for the Travel Act conspiracy." (Emphasis in original.) Id., 30.

"The district court denied the motion. It held that the jury could have reached different conclusions about the objective of Bravo's travel when separately considering the conspiracy and substantive Travel Act counts. Stated otherwise, the court found that the jury's unelaborated finding on count one that Bravo had conspired to travel 'in aid of racketeering' could have reflected a finding that Bravo had *conspired* to violate the Travel Act with the intent to promote federal program bribery. The court considered this outcome possible even though, when considering the *substantive* Travel Act crime (count two), the jury found that Bravo did not violate the Travel Act for that purpose *and* even though the jury explicitly found (on count one) that Bravo did *not* conspire to violate § 666. The court held that any inconsistency in such a scenario was not problematic." (Emphasis in original.) Id.

On appeal, the First Circuit rejected the government's claim that Bravo's conviction of conspiracy could be upheld because the inconsistencies discussed previously could be reconciled. As the appeals court reasoned, "the problem here is not merely the possibility of inconsistent verdicts. Rather, even if we were to assume that the jury *could* have relied on a § 666 theory in finding Bravo guilty on the Travel Act conspiracy count, we do not in fact know whether the racketeering activity found by the jury as a predicate was bribery under federal law or bribery under the repealed Puerto Rico statutes. We are thus confronted with a situation in which the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected. *Yates* v. *United States*, 354 U.S. 298, 312, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957), overruled on other grounds by *Burks* v. *United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). When a jury has

been presented with several bases for conviction, one of which is legally erroneous, and it is impossible to tell which ground the jury convicted upon, the conviction cannot stand. *United States* v. *Sawyer*, 85 F.3d 713, 730–31 (1st Cir.1996); see also *United States* v. *Mubayyid*, 658 F.3d 35, 71 (1st Cir. 2011) [cert. denied sub nom. *Al-Mona* v. *United States*, U.S. , 132 S. Ct. 2378, 182 L. Ed. 2d 1052 (2012)]; *United States* v. *Kavazanjian*, 623 F.2d 730, 739–40 (1st Cir. 1980) (reversing verdict on multi-object conspiracy conviction under [18 U.S.C.] § 371 where one object failed to state a crime)." (Internal quotation marks omitted.) *United States* v. *Fernandez*, supra, 722 F.3d 33.

The First Circuit then turned to the question of the appropriate remedy and determined that, although normally a new trial should be ordered if the jury may have found guilt upon a legally invalid basis, double jeopardy principles barred Bravo's retrial on count one. Id., 33–34. The court reasoned that, taken together, the jury's explicit finding on count one that Bravo had not conspired to violate federal bribery law and its finding on count two that he had not violated the federal bribery statute, constituted a necessary finding that the federal law did not serve as a basis for the jury's conclusion on count one that Bravo had conspired to violate the Travel Act "in aid of racketeering . . . ." Id., 34. Said another way, the jury's special findings on counts one and two trumped its inconsistent general verdict of guilty of conspiracy.

We agree with the First and Eighth Circuits[18] that if a jury in an answer to an interrogatory or in a special finding makes a unanimous factual finding beyond a reasonable doubt and that finding negates one or more of the essential elements of the underlying offense, such a finding constitutes an acquittal regardless of a general verdict by the jury finding a defendant guilty of that offense. This result is required because the jury's answer, in the parlance of the double jeopardy cases previously discussed, constituted "a resolution, correct or not, of some or all of the factual elements of the offense charged . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Paolella*, supra, 210 Conn. 122–23, quoting *United States* v. *Martin Linen Supply Co.*, supra, 430 U.S. 571.[19]

C

We turn then to analyzing the jury's answer to the interrogatory in this case to determine whether, in light of all of the circumstances, it constituted a unanimous resolution, correct or not, of some or all of the factual elements of any of the charges of which the jury found the defendant guilty. We also emphasize that "[t]he burden is on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided" previously by the jury. (Internal quotation marks omitted.) *United States* v. *Mitchell*, supra, 476

F.3d 544. For the reasons that follow, we conclude that the defendant has not met that burden.

We recognize, and the parties do not dispute, that the state had the obligation with respect to both counts, and any lesser included offenses thereof, of proving beyond a reasonable doubt that the defendant was the proximate cause of the *deaths* of Servin and Krakowski. This burden, in the circumstances of this case, required the state to disprove beyond a reasonable doubt that Servin's conduct constituted an intervening cause such that the defendant's conduct was not the proximate cause of the deaths of Servin and Krakowski. See, e.g., *State* v. *Kwaak*, 21 Conn. App. 138, 146, 572 A.2d 1015 ("causation element requires that the state prove beyond a reasonable doubt, first that the death of a person would not have occurred 'but for' the defendant's [wrongful conduct], and second, that the defendant's [wrongful conduct] substantially and materially contributed to the death . . . in a natural and continuous sequence, unbroken by an efficient, intervening cause"), cert. denied, 215 Conn. 811, 576 A.2d 540 (1990). If the jury unanimously concluded that the state had failed to meet this burden of proof beyond a reasonable doubt, then the defendant was entitled to a judgment of acquittal despite its verdict of guilty on the lesser included offenses with respect to count one and count two.

The jury interrogatory, which was drafted by the defendant, asks: "Did the conduct of David Servin constitute an intervening cause of the automobile collision? Yes ___ No ___." The jury checked the "No" space.

First, it is highly significant that the interrogatory is silent regarding the need for jury unanimity. It does not ask the jury whether its conclusion with respect to this question was reached unanimously. Thus, without the interrogatory asking the jury about its unanimity, we are left to speculate regarding whether the answer simply reflects a majority vote. Even the ambiguous interrogatory in *Mitchell* was clear that the jury's finding on materiality must be unanimous. Moreover, we are unwilling to presume unanimity because the jury was never given any specific instructions on the meaning of the interrogatory, how it related to its verdicts on the various counts,[20] or, most importantly, that its answer to it must be unanimous. The court, as an afterthought, simply told the jury to fill it out and to hand it into the marshal. Finally, we note that the jury was never polled on its initial answer to the interrogatory.

Second, the language of the interrogatory conflicts with the charge the court gave the jurors on intervening cause. The court's charge correctly informed the jury that it had to consider, in deciding whether the state had proven proximate cause beyond a reasonable doubt, whether Servin's conduct was an intervening cause in the *deaths* of Servin and Krakowski. See General Stat-

utes §§ 53a-56 (a) (1), 53a-57 and 14-222a; see also *State v. Lawson*, 99 Conn. App. 233, 241, 913 A.2d 494, cert. denied, 282 Conn. 901, 918 A.2d 888 (2007). The interrogatory, however, asked the jury to determine whether the conduct of Servin was an intervening cause of the *automobile collision*. Thus, the jury, by answering the interrogatory "yes," did not necessarily make a determination regarding an essential element of the offenses with which he was charged.

We recognize, of course, that if Servin's conduct was the intervening cause of the collision, it is difficult to fathom how the defendant's actions could still be the proximate cause of the deaths. In this regard, however, we note that the distinction between the cause of the collision and the cause of the deaths appeared to be of some importance to the jury. After returning its initial verdicts, in a note to the court on November 6, 2012, the jury asked "if there is a distinction between the accident and the deaths." The following day the jury continued to express its struggle with the interrogatory and the court's charge by stating in another note: "The reason we raised the question 'was there any distinction between the accident and the deaths' is, and based on testimonies, because SOME of us jurors believe that [Servin's] actions contributed to the accident but their deaths are caused by speed." (Emphasis in original.) We decline to speculate as to why the jury believed this distinction was significant. What is noteworthy is that there either may have been confusion about the legal principles of proximate and intervening cause, or individual jurors may have been wrestling with different factual scenarios that made this distinction important to them. In any event, the interrogatory did not ask them unanimously to resolve, correct or not, an essential element of the offenses charged. Accordingly, we conclude that the defendant has not met his burden "to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided" previously by the jury, and, therefore, he is not entitled to a judgment of acquittal on either count one or two of the information.

## II

Having concluded that the defendant was not entitled to a judgment of acquittal on counts one and two, we next turn to the issue of whether the court properly vacated all of the verdicts and ordered the jury to resume its deliberations on all of the charges, including those offenses for which the jury initially found the defendant not guilty. The state argues that, in light of the perceived inconsistency between the jury's answer to the interrogatory and the verdicts of guilty, the court properly vacated all of the verdicts and ordered the jury to resume deliberation on all of the counts. We conclude that, under the circumstances of this case, it was improper for the court to vacate the verdicts of not guilty on the two counts of manslaughter in the

second degree and the lesser included offense of misconduct with a motor vehicle under count two, and order the jury to resume deliberations on all of the offenses charged under counts one and two.[21]

A

As we have previously discussed, "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that [a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution." (Internal quotation marks omitted.) *United States* v. *Martin Linen Supply Co.*, supra, 430 U.S. 571. In support of its argument that double jeopardy did not bar the trial court from vacating the verdicts of not guilty, the state principally relies on our Supreme Court's decision in *State* v. *Colon*, supra, 272 Conn. 106. In *Colon*, the defendant was found guilty of one count of murder in violation of General Statutes § 53a-54a and one count of capital felony in violation of General Statutes (Rev. to 1997) § 53a-54b (9). Id., 127. After a jury found the defendant guilty, a separate penalty hearing was conducted. Following deliberations, the jury sent a communication to the court and indicated that it had reached a verdict. Id., 278. The clerk then asked the jurors about their findings from their special verdict form, and the jury reported that it had unanimously agreed, among other things, that the aggravating factor had *not outweighed* the mitigating factors found by one or more members of the jury. Id., 278–79. The initial special verdict form was then read and accepted. Id., 279. The jury's initial verdict would not have permitted the imposition of the death penalty.

Immediately upon exiting the courtroom, a member of the jury informed a sheriff that there was a problem with the verdict. Id. At this time, the jury remained undispersed, without any communication from or with outside parties. Id. The court was informed of the problem and, after discussion in chambers with both sides, a jury poll was taken and each individual juror indicated that his or her intent was to announce that the aggravating factor outweighed the mitigating factor or factors. The jury was then instructed to complete another special verdict form, which indicated its intended findings. Id. The corrected verdict therefore called for the imposition of the death penalty. Id., 280.

On appeal, the defendant in *Colon* claimed that the " 'enforcement' of the jury's second verdict violated his rights under the double jeopardy clause because the jury's [initial] verdict constituted a 'complete and final judgment' to which jeopardy attached." Id., 294. Our Supreme Court, after extensively reviewing precedent from around the country, concluded that the trial court's acceptance of the jury's corrected verdict, prior to the jury's discharge, did not violate the defendant's double jeopardy rights, as the jury had not been dis-

charged prior to its correction. Id., 297. Critical to the court's ultimate conclusion, however, was the fact that the jury never "actually unanimously agreed that the aggravating factor did not outweigh the mitigating factor or factors . . . and, therefore, the defendant was not acquitt[ed] within the meaning of" our double jeopardy jurisprudence. (Emphasis omitted; internal quotation marks omitted.) Id., 298.

The circumstances of the present case, however, are fundamentally different from those presented in *Colon* or the cases on which *Colon* relied. Here, the jury never expressed to the court that its verdicts were not what it intended. No juror expressed to the court or court staff at any time that he or she had truly intended to find the defendant guilty of the offenses on which he or she had voted not guilty. Accordingly, we conclude that the state's reliance on *Colon* is not justified.

We also emphasize that no juror indicated to the court that he or she had any concern regarding unanimity on the verdicts of not guilty.[22] Thus, this case is unlike *Thomas* v. *United States*, 544 A.2d 1260 (D.C. 1988), which is relied on by the state. In *Thomas*, the jury originally returned a split verdict, which was followed by a jury poll. Id., 1261. After only two jurors were polled, it was evident that confusion and lack of unanimity existed. Id. Without polling the remaining jurors on that count or any of the remaining counts, the court concluded that there was a lack of unanimity. The court then sent the jury back to continue its deliberations, on all counts, until a unanimous verdict was reached.[23] Id. The issue on appeal in *Thomas* was whether "the [d]ouble [j]eopardy [c]lause bars a jury from engaging in further deliberations regarding charges as to which the foreperson has announced verdicts of not guilty but *which have not yet been accepted or recorded by the court.*" (Emphasis added.) Id., 1262.

Here, it was the trial court, not the jury, that raised the issue of a possible inconsistency between the verdict and interrogatory, and sought to rectify a perceived problem with the verdict, after it had already accepted and recorded the initial verdicts as delivered by the foreperson. Indeed, when the jury was asked to return to the courtroom after it had returned its initial verdicts, the court took no steps to ascertain whether the verdicts returned were reflective of the jury's true intent or were not unanimous.

Finally, and perhaps most importantly, the jury's answer to the interrogatory was not inconsistent in any way with the verdicts of not guilty. Thus, although the apparent inconsistency between jury's answer to the interrogatory and the guilty verdicts may have given the court a permissible basis to vacate the guilty verdicts, it could not have served as a basis for vacating the not guilty verdicts. Hypothetically, the jury may have concluded that the defendant was not guilty of manslaugh-

ter in the second degree as alleged in counts one and two because the state failed to meet its burden of proof on some element of that offense (such as recklessness) other than the element of proximate cause. Accordingly, we conclude that the court improperly vacated the initial verdicts of not guilty. Therefore, because the jury on count one (Servin) ultimately returned a guilty verdict on the lesser included offense of misconduct with a motor vehicle and the jury had previously acquitted him of that offense as to the death of Servin, we conclude that we must direct the court to render a judgment of acquittal as to that offense.

B

Having concluded that the court improperly vacated the verdicts of not guilty, we turn then to whether the court properly vacated the guilty verdicts and ordered the jury to resume deliberations. The defendant argues on appeal, and we have addressed in part I of this opinion, that the court should not have vacated those verdicts and ordered the jury to resume deliberations, but instead, as required by double jeopardy principles, should have rendered a judgment of acquittal on counts one and two in their entirety. Because we have decided that claim adverse to the defendant, we can divine no other logical basis on which to conclude that he was aggrieved by, or would have objected to, the court ordering the jury to resume its deliberations on the lesser included offenses for which the jury initially returned verdicts of guilty. Indeed, the defendant in his brief does not raise any independent claim that it was improper to order further deliberations on those offenses for which the jury initially found him guilty, but instead relies solely on the claim that he was entitled to a judgment of acquittal on all charges. In light of our rejection of that claim, the defendant could only have benefited from the jury reconsidering its guilty verdicts. Thus, any error was harmless in these circumstances and cannot entitle the defendant to relief. Accordingly, no further discussion of this issue is warranted.

III

Finally, we turn to the defendant's claim that even if the court properly directed the jury to resume deliberations, the court's supplemental instructions to the jury were nevertheless improper. Specifically, the defendant claims that while directing the jury to resume its deliberations, and at various times thereafter, the court improperly instructed the jury on the relevant legal principles that would inform its deliberations, and conveyed that its answer to the interrogatory should conform to its initial findings of guilty. The state argues in response that the court's instructions were correct and not improperly suggestive because they emphasized the jury's sole role as the fact finder. We conclude that the court's instructions both failed to accurately and completely instruct the jury on the principles that it

was to apply during its additional deliberations, and, at times, implicitly suggested to the jury that it should change its initial answer to the special interrogatory to a conclusion that Servin's conduct was not an intervening cause.

We begin by setting forth the applicable legal principles and standard of review that govern our analysis. Because the court's instructions following its rejection of the initial verdicts related to the existence or lack of an intervening cause, an essential element of the state's case, the defendant's claim raises an issue of constitutional magnitude. See *State* v. *Johnson*, 316 Conn. 45, 58, 111 A.3d 436 (2015) ("[i]t is . . . constitutionally axiomatic that the jury be [properly] instructed on the essential elements of a crime charged" [internal quotation marks omitted]). "If an improper jury instruction is of constitutional magnitude, the burden is on the state to prove harmlessness beyond a reasonable doubt." (Internal quotation marks omitted.) Id. "[A]n instructional constitutional error is harmless if there is no reasonable possibility that the jury was misled." (Internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 288 n.13, 664 A.2d 743 (1995); see id. (perceiving "no functional difference between the two formulations" [internal quotation marks omitted]). "In performing harmless error analysis, we keep in mind that [i]n determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge." (Internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 166–67, 869 A.2d 192 (2005). "In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury. . . . A challenge to the validity of jury instructions presents a question of law over which [we have] plenary review." (Citation omitted; internal quotation marks omitted.) *State* v. *Santiago*, 305 Conn. 101, 190–91, 49 A.3d 566 (2012).

With the foregoing principles in mind, we turn to the merits of the defendant's claim. At the outset, we observe that the court's supplemental instructions were not delivered during one continuous charge, but over the course of several separate exchanges with the jury, many of which were prompted by questions posed to the court by the jury during the resumed deliberations. Mindful that we must consider the court's instructions in their entirety, we review each of the court's relevant remarks in the order and context in which they were delivered. Because the court's initial instructions regarding the interrogatory established the founda-

tional principles that the jury was to apply during its deliberations, we begin our analysis with those remarks.

At the conclusion of its charge to the jury, the court stated: "And then there is one other matter I almost forgot. . . . It's going to be marked as a court exhibit, and it's labeled as an interrogatory. The foreperson, on behalf of the jurors, will answer this one question before coming out and returning the verdict. You'll fold that interrogatory in half, hand it to the marshal and the marshal will hand it to the clerk, all right. So there will be one question which calls for a yes or no answer, all right."

Although there is no requirement that the court engage in a prolonged explanation of the considerations that will inform the jury's responsibilities with respect to an interrogatory, these remarks were especially brief and provided virtually no guidance to the jury about the purpose of the interrogatory and how it related to the individual offenses with which the defendant was charged. Most significantly, the court did not explain to the jury that the question posed in the interrogatory should not be considered in isolation from its instructions on the specific charges upon which the jury was to deliberate. The court also did not advise the jury that an affirmative answer to the interrogatory would dispose, in the defendant's favor, of *all* charges in counts one and two, and would obligate it to return a verdict of not guilty as to those counts. The court also failed to instruct the jury that its answer to the interrogatory must reflect the unanimous view of the jury. Finally, the court did not remind the jury, as previously discussed in this opinion, that the state had the obligation to disprove beyond a reasonable doubt that Servin's conduct was an intervening cause in the deaths of Servin and Krakowski. In sum, at the time that the jury first began its deliberations, it had no explanation from the court regarding the purpose of the interrogatory, its critical connection to the possible verdicts the jury could lawfully return, and the other requirements, such as unanimity, that must have been met before the jury could return an answer. Indeed, after the jury first began its initial deliberations, it sent a note to the court that indicated that it was already struggling with the doctrine of intervening cause and how that doctrine related to the various offenses upon which it was deliberating.

After the jury returned its first verdicts and answer to the interrogatory, the court, outside of the jury's presence, vacated its acceptance of all of the verdicts. It then recalled the jury and stated: "The reason why I have called you back is that I have to advise you that the court is unable to accept the verdict as it was rendered because it is a verdict that is inconsistent with the applicable legal principles with which I have instructed you." The court then stated its intention to reinstruct the jury, and began by reviewing its prior instructions

regarding causation and intervening cause. Following those instructions, the court turned to the interrogatory and instructed the jury as follows: "Directly related to that issue of causation was the interrogatory that was posed to you: did the conduct of David Servin constitute an intervening cause of the automobile collision? . . . So, the answer, yes, to the interrogatory means that the intervening cause has relieved the defendant of criminal responsibility, and you must find the defendant not guilty as to counts one and two of the information, and to its lesser included offenses. Now, if you have found that the conduct of David Servin does not constitute an intervening cause of the accident, only then may you go on to consider the verdict of guilty to the charges and also to the lesser included offenses that were outlined in count one and two."

The court continued: "So, in summary, I hope this helps to clarify some of the inconsistencies that [have] led this court not to accept your verdict. Therefore, and simply once again, the court will not invade in your findings of facts. However, it is very important that the jury interrogatory as to causation is consistent with the ultimate verdict. Therefore, I am going to direct you to take these instructions into consideration and engage in further deliberations, and for you to clarify what your intentions were. Did you intend to relieve the defendant of criminal responsibility or did you not intend to relieve the defendant of criminal responsibility by finding an intervening cause? Whatever your decision is, that is your decision to make, all right."

The court concluded by stating: "So, thank you. I am going to ask you to go back to the deliberation room. I am going to ask you to then send a note to the court that you have reached your conclusion, at which point I am going to have you come back down again, and I am going to have the . . . clerk read to the jury the jury interrogatory. Read it, you will answer it and then go on to the verdict form again and take your response, all right."

Although these instructions provided the jury with more information about the purpose of the interrogatory, they were problematic in several other respects. Initially, by focusing its instructions almost entirely on the element of causation and its relationship to the doctrine of intervening cause, the court narrowed the scope of the jury's redeliberations to resolving those specific issues. The jury was free, however, to reconsider and continue deliberating on any aspect of its verdicts, including any of the other elements of the charges alleged in counts one and two of the information. Although it was reasonable to emphasize the issues that most likely gave rise to the jury's confusion, by failing to advise the jury that it was also free to reconsider all of its findings, the court implicitly suggested that the jury's specific findings with respect to causation

and the doctrine of intervening cause should be the focus of its attention.

Furthermore, although the court stated that it could not accept the jury's verdicts, it had already done so in the jury's presence. Thus, it was not made clear to the jury that the verdicts had been vacated and were no longer in effect. This lack of clarity created a substantial risk that the jury would view its task as having to correct a defect in its original verdicts, rather than return new verdicts altogether. A number of remarks made by the trial court then compounded this ambiguity by suggesting that the problem in the original verdict was the jury's answer to the interrogatory.

First, rather than emphasizing that the special interrogatory and verdict must be consistent with each other, the court stated that it was "very important that the jury interrogatory . . . is consistent *with the ultimate verdict*." (Emphasis added.) This remark was likely to direct the jury's focus to the interrogatory and the potential need to change its answer to it. In other words, it suggested that the interrogatory could simply be changed to match the jury's initial verdicts of guilty on certain of the offenses. The fact that the court focused its supplemental instructions on the element of causation and its interplay with the interrogatory only further suggested that the affirmative answer to the interrogatory, rather than both the general verdicts of guilty and the answer to the interrogatory, was the cause of the court's refusal to accept its initial verdicts.

Second, the court's query to the jury—"[d]id you intend to relieve the defendant of criminal responsibility or did you not intend to relieve the defendant of criminal responsibility by finding an intervening cause"—improperly suggested that the jury's overarching intent to hold, or not hold, the defendant criminally responsible should govern its answer to the special interrogatory. In truth, however, the answer to the special interrogatory constituted a *factual finding* that the jury was required to make regardless of whether it desired to hold the defendant criminally responsible or not. By tying the answer to the interrogatory to the *legal* outcome of the case, the court distracted the jury from its primary task of deciding the factual issues put before it.

The court next instructed the jury after the jury sent the court another note. In the note, the jury stated: "We would like to know if the interrogatory statement can be rescinded."[24] This note confirms our concern that the court's earlier instructions would be considered as suggesting to the jury that it could fix the problem by changing its answer to the interrogatory. The court then heard argument from the state and defense counsel outside of the jury's presence. Defense counsel moved for a judgment of acquittal, arguing that the jury's question indicated that it had interpreted the court's previ-

ous charge as an instruction to change its answer to the interrogatory. In response, the state maintained its position that the jury should be afforded the opportunity to clarify its findings. The state also suggested that the court should explain to the jury that the question posed in the interrogatory "is going to be re-asked . . . ." The court stated its intention to proceed as follows:

"[The Court]: [Defense counsel], it was—the interrogatory was proposed by you to give to the jurors, and you requested that they answer this question.

"[Defense Counsel]: Yes, Your Honor.

"[The Court]: So, I think they have not yet answered the question. And to say, can you just rescind, is not part of the directions. That wasn't in any direction. It wasn't a possibility. They had not been instructed on anything to rescind. So, the answer, when I pull them out, is, I think, to say that my instructions to you prior [were] that the clerk would read the interrogatory to you and you would answer it. What I am going to do is adjourn, let them deliberate for a short period of time, call them out and, when they are ready, send a note and the clerk will ask them the question and they can answer yes or no and go from there, all right."

At that point, the court recalled the jury and provided the following instructions: "Ladies and gentlemen, I did receive your note. It states, we would like to know if the interrogatory statement can be rescinded. I am just going to refer you back to a prior instruction, which was that what would happen is, I would call you down, and the clerk would read the interrogatory to you and you would then answer aloud what your decision is on that. So, what I am going to do at this time is, I'm going to have you just go back; stay down here. You can deliberate, and if you can answer that interrogatory, the first step of that, I'll bring you back in, and the clerk will ask you that question and the foreperson can answer that question, once again, yes or no, the interrogatory."

As defense counsel and the state appeared to recognize at the time, the jury's note is most logically interpreted as questioning whether the jury could rescind its answer to the interrogatory. Said another way, the jury seemed to be laboring under the impression that its original answer remained in effect and could only be changed if it was first rescinded. In response to the jury's question, the court did not provide a clear answer. It stated only that it would recall the jury and have it state its answer to the interrogatory in open court. The court did not explain that the jury's original answer to the interrogatory was no longer in effect, and that the jury was to reconsider and answer the interrogatory as if it had never previously done so. This omission again risked creating or reinforcing the impression that the jury was not beginning its deliberations anew, both with

respect to the verdicts and the interrogatory, but that it instead needed to undo its answer to the interrogatory.

Later in the day, the jury sent another note to the court. This note stated, in relevant part: "Your Honor, [w]ith all due respect, we, the jurors, still remain in agreement with the interrogatory statement that [Servin's] actions contributed to the accident." The jury's note also stated: "Our question remains if there is a distinction between the accident and the deaths."[25] In response, defense counsel again moved for a judgment of acquittal, arguing that although the jury had not used "the magic words," it was clear from its note that it was affirming its prior answer to the interrogatory. The court declined to rule on the defendant's motion at that time, however, instead deferring the matter until the next day.

The following day, the court advised the state and defense counsel that it intended to submit the interrogatory to the jury again[26] and refer the jury to its previous instructions. Specifically, the court stated that "when [the jury] sent out the note yesterday they used an incorrect legal term. What they meant I cannot infer, and that is the reason why I am resubmitting the jury interrogatory because it has the correct legal term of whether or not they find an intervening cause. So, in light of the term that [the jury] used, contributing factor, it has to be clarified and that is the purpose that the court is going to resubmit the interrogatory . . . and since I had already reinstructed them as to the law, I am giving them the opportunity to render a verdict."

The court then recalled the jury and instructed it as follows: "Now . . . yesterday afternoon, as you'll recall, the court did not accept your verdict as to counts one and two. Then I gave you the instruction on the law pertaining to causation and the meaning of intervening cause. So . . . in the first part of your note you indicated that you had come to a finding regarding David Servin's conduct. Now, at this point in time the court is going to resubmit to you the jury interrogatory. It is being resubmitted to you solely for the purpose that your finding be recorded in writing, whatever it may be."

The court continued: "After you answer this interrogatory, then you should consider my recent instructions to you, and if you are able to render a verdict as to counts one and two, you should send out a note indicating that you are able. If you hand a note to the marshal— as I say, if you want to resubmit to the first question, you may also do that. Once you are able to answer the interrogatory and let the marshal know if you are able to reach a verdict or not, then I'll call you back and we'll read the interrogatory in open court and a verdict, if you shall have that, all right." The court then directed the jury to resume deliberations.

By asking the jury to answer the interrogatory first,

and then, "if [the jury was] able to," return a verdict, the court divorced the jury's consideration of the question posed by the interrogatory from the factual determinations it needed to make to return general verdicts on the substantive charges. It thereby created the risk that the jury would dissociate its verdicts from its answer to the interrogatory when the two were actually inextricably intertwined. Thus, it risked exacerbating any confusion regarding the interplay between the interrogatory answer and the verdicts. Instead, the court only referenced its prior instructions and directed the jury to resume deliberations. Although the court's prior instructions may have explained the interplay between the verdicts and the interrogatory, the court's more recent instructions that the jury answer the interrogatory first and then decide on the verdicts undermined the earlier instructions and, again, unduly focused the jury on the interrogatory rather than on the verdicts and interrogatory together.

Moreover, at some point after the court provided these instructions, the jury sent another note to the court explaining its previous question asking whether a distinction existed between Servin's conduct constituting an intervening cause in the accident and his conduct constituting an intervening cause in his and Krakowski's deaths.[27] See footnote 25 of this opinion. Specifically, the jury stated: "The reason we raised the question 'was there any distinction between the accident and the deaths' is, and based on the testimonies, because SOME of us jurors believe that [Servin]'s actions contributed to the accident but their deaths are caused by the speed." (Emphasis in original.)

In this instance, the jury may well have been raising a very insightful concern about the incongruence between the court's instructions on proximate cause with respect to the counts, and the phrasing of the interrogatory. As discussed previously, the court's charge correctly informed the jury that it needed to determine whether Servin's conduct was an intervening cause in the *deaths*, while the jury interrogatory asked whether his conduct was an intervening cause in the *collision*. Inexplicably, the court failed to answer the jury's question and instead responded to a separate and largely unrelated question submitted by the jury earlier in its deliberations. Specifically, the court stated: "I am also going to note that court's exhibit 7 was address[ed]: Your Honor, while explaining the laws, can you please describe if contributory negligence is applicable in this matter. That was sent out very early on. The court gave you the jury charge. You have a hard copy of it. And contributory negligence is not contained in that jury charge. It is not part of the law that is applicable to the case here, all right. So, you have the charge. You must apply only that law which the court gave you, and you remember my instruction that it is that law that you must apply to the case, all right." This failure to address

the point of confusion raised by the jury deprived it of proper guidance in performing its critical duty of making a factual finding on an essential element of the charged offenses.

To summarize, the court's initial instructions to the jury provided it with no explanation about the purpose of the interrogatory, its connection to the charges alleged in counts one and two of the information, or the important requirement that the jury return a unanimous answer. In its supplemental instructions directing the jury to redeliberate, it was unclear whether the court had vacated the jury's initial verdicts and interrogatory answer such that the jury would need to return an entirely new answer to the interrogatory and verdicts. In failing to provide the jury with this clear guidance, it is reasonably likely that the court left the jury with the impression that its task was to "fix" its answer to the interrogatory, rather than begin deliberations anew with respect to both the verdicts and the interrogatory. Moreover, the court's focus in its instructions on the doctrine of intervening cause and its relation to the interrogatory created a substantial risk that the jury would view its original answer to the interrogatory as the cause of the trouble. By then advising the jury that it was "very important" that its interrogatory answer be consistent with its "ultimate verdict," the court further suggested that the original verdict of guilty was correct and that the answer to the interrogatory was not. Similarly, the court's instructions casting the relevant inquiry as focusing on the jury's intent to hold, or not hold, the defendant "criminally responsib[le]," suggested that the resolution of the issue of intervening cause should be governed by the jury's desire to obtain a particular overall result. Furthermore, the court's procedural direction to answer the interrogatory first, and then, if the jury was able to, return a verdict, conveyed that the verdicts were severable from the interrogatory and not inextricably intertwined with it. Finally, the court completely failed to address a substantive question posed by the jury pertaining to a critical issue regarding an essential element of the offenses charged in counts one and two of the information. Thus, when considered in their entirety, the court's instructions did not provide the jury with appropriate guidance on the principles that would inform its deliberations.

The state nevertheless argues that the court instructed the jury in such a way that it could not have been misled; for example, by repeatedly emphasizing that the jury was the sole fact finder and that the court would not invade the jury's findings. We are not persuaded that the extensive omissions and misstatements in the court's instructions, as well the implicit suggestion that the interrogatory answer was incorrect, could be cured by the court's generic reminders of the jury's role as the sole fact finder. We note, for instance, that the jury specifically requested a transcript of the court's

instructions "with regard to inconsistency of the verdicts"; see footnote 27 of this opinion; thus suggesting that it was experiencing some difficulty applying the court's instructions. Even if none of the court's instructions, by themselves, were misleading, we conclude that, taken together, it was reasonably possible that the court's instructions misled the jury.

We emphasize again that because the defendant's claim of instructional impropriety is of constitutional magnitude, the burden is on the state to prove that it was not "reasonably possible that, considering the charge as a whole, the jury was misled." (Internal quotation marks omitted.) *State* v. *Padua*, supra, 273 Conn. 166; see *State* v. *Johnson*, supra, 316 Conn. 63 ("[t]he test for determining whether a constitutional error is harmless . . . is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" [internal quotation marks omitted]). Given the extent of the instructional improprieties, and their close relation to a heavily contested element of the state's case, we conclude that the state has failed to satisfy this significant burden.

We turn next to the task of determining the appropriate remedy. The defendant argues that the proper remedy under the circumstances is to have the case remanded to the trial court with direction to render a judgment of acquittal on counts one and two of the information. "It is well established [however] that instructional impropriety constitutes 'trial error' for which the appropriate remedy is a new trial, rather than a judgment of acquittal. As the United States Supreme Court observed in *Burks* v. *United States*, 437 U.S. 1, 15, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978), 'reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.' " *State* v. *DeJesus*, 288 Conn. 418, 434–35, 953 A.2d 45 (2008). Accordingly, we conclude that the appropriate remedy is to vacate the guilty verdicts and order a new trial, with respect to count one (Servin), on the lesser included offense of negligent homicide with a motor vehicle, and, with respect to count two (Krakowski), on the lesser included offenses of misconduct with a motor vehicle and negligent homicide with a motor vehicle.[28]

The judgment is reversed only with respect to counts

one and two. The case is remanded with direction to render a judgment of acquittal on the offense of misconduct with a motor vehicle on count one of the information, and for a new trial on the lesser included offense of negligent homicide with a motor vehicle in count one, and on the lesser included offenses of misconduct with a motor vehicle and negligent homicide with a motor vehicle in count two. The judgment of guilty on the offense of reckless driving in count three is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-57 (a) provides: "A person is guilty of misconduct with a motor vehicle when, with criminal negligence in the operation of a motor vehicle, he causes the death of another person."

[2] The defendant also claims that the court improperly refused to give effect to the jury's reaffirmation of its original answer to the jury interrogatory. We conclude that it is unnecessary to address this claim separately because we treat it as subsumed within our analysis of the defendant's third claim.

[3] General Statutes § 53a-56 (a) provides in relevant part: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

[4] The court stated its intention to vacate *all* of the verdicts, which necessarily would have included the acquittals and verdict of guilty of reckless driving as alleged in count three.

[5] After the court expressed its intent to reinstruct the jury, the state reiterated its support of this action when it stated, "I think that's appropriate, given the inconsistencies in the verdict, and obviously it seems as if there is a basic misunderstanding of the law as given to them in Your Honor's jury instructions, and therefore I think it is important for the jury to receive those instructions and then assure that the verdict is legally correct."

[6] Specifically, the court reasoned: "[R]escind is not part of the directions. That wasn't in any direction. It wasn't a possibility. They had not been instructed on anything to rescind."

[7] The court did not explain why it would be bound by a second inconsistent verdict, but was not bound by that scenario after the initial verdicts.

[8] The court previously vacated the jury's initial verdict of guilty of reckless driving on count three of the information. The court never ordered the jury to resume its deliberations on that count. When the court ultimately accepted the jury's final verdicts, the court indicated that it would accept the previously vacated guilty verdict on count three. The defendant does not raise any claim of error with respect to count three, and this court, therefore, leaves it undisturbed.

[9] The defendant renewed his previous argument and stated: "[The] verdict was internally inconsistent with the special interrogatory that they answered yesterday affirmatively saying that David Servin's conduct constituted an intervening cause of the deaths of the teenagers in that case. That was the verdict, and at that point I made a motion for judgment of acquittal on the lesser included offense because it was inconsistent with the special interrogatory. Therefore, it fit a classic definition of a [Practice Book §] 42-51 motion of acquittal in that the judge, upon motion of the defendant, shall order the entry of a judgment of acquittal on any lesser included offense for which the evidence does not reasonably permit a finding of guilty beyond a reasonable doubt. That was classically the situation. I made a motion that Your Honor enter a finding of not guilty on the lesser included offenses, and Your Honor denied that."

[10] In support of the claim that the court should have found the interrogatory dispositive, the defendant also cites *Ex Parte Peterson*, 253 U.S. 300, 310, 40 S. Ct. 543, 64 L. Ed. 919 (1920), *Seals* v. *Hickey*, 186 Conn. 337, 351, 441 A.2d 604 (1982), *State* v. *Alonzo*, 131 Conn. App. 1, 6, 26 A.3d 109, cert. denied, 303 Conn. 912, 32 A.3d 965 (2011), and Practice Book § 42-30 ("[t]he judicial authority shall, if the verdict is in order and technically correct, accept it without comment") to bolster the proposition that questions of fact are in the sole domain of the jury and should be made without interference by the court.

The defendant argues that, by rejecting the jury's initial verdict and answer to the interrogatory, the court invaded his constitutional right to have factual determinations made by the jury. The defendant's brief, however, contains little or no discussion of these authorities and makes no attempt to apply

them to the facts of this case. We, therefore, consider this claim abandoned except to the extent that it relates to the defendant's double jeopardy claim. We also note that the decisions in *Ex Parte Peterson* and *Hickey* are both civil cases and therefore provide minimal or no guidance with respect to the complicated issues in this criminal prosecution.

[11] Although the initial guilty verdicts on the lesser included offenses of negligent homicide (count one) and misconduct with a motor vehicle (count two) were arguably "mutually exclusive convictions," the defendant has not challenged the verdicts on this ground.

[12] See, e.g., *State* v. *Bush*, 156 Conn. App. 256, 260, 263 n.4, 112 A.3d 834 (General Statutes § 53-396 [b] requires special verdict in racketeering prosecution), cert. granted, 317 Conn. 903,     A.3d     (2015).

[13] For a cogent discussion of why interrogatories should not be used in most criminal cases, see *State* v. *Simon*, 79 N.J. 191, 199–200, 398 A.2d 861 (1979); id., 204 ("special interrogatories as a tool in criminal trials are not condoned, and their use [is] discouraged"); *United States* v. *Spock*, 416 F.2d 165, 181 (1st Cir. 1969) ("[t]o ask the jury special questions might be said to infringe on its power to deliberate free from legal fetters; on its power to arrive at a general verdict without having to support it by reasons or by a report of its deliberations" [internal quotation marks omitted]).

[14] *Powell* did not involve an inconsistency between a jury's answer to an interrogatory and a verdict of guilty. Instead, *Powell* involved an inconsistency between an acquittal on one or more counts and verdicts of guilty on one or more other counts. The United States Supreme Court concluded that "there is no reason to vacate [the defendant's] conviction merely because the verdicts cannot rationally be reconciled. [The defendant] is given the benefit of her acquittal on the counts on which she was acquitted, and it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted." *United States* v. *Powell*, supra, 469 U.S. 69. The result in *Powell* is consistent with Connecticut law on inconsistent verdicts, as discussed in part I A of this opinion.

[15] *Dotterweich* also did not involve an inconsistency between a jury's answer to an interrogatory and a verdict of guilty. Instead, *Dotterweich* involved inconsistent verdicts between defendants in the case, which the United States Supreme Court concluded should be left undisturbed. This result is also consistent with Connecticut law.

[16] The state also relies heavily on *State* v. *Searles*, 113 Conn. 247, 255, 155 A. 213 (1931), in which our Supreme Court stated: "When there is uncertainty as to the actual intent of the jury, the power of the court in a criminal case to return them to their room to render a clear and unambiguous verdict is, in this country, recognized as indispensable to an orderly and impartial administration of justice."

We do not agree that *Searles* is applicable in this case. First, the court in *Searles* did not discuss double jeopardy principles, and *Searles* was decided long before the federal constitutional guarantee against double jeopardy was made applicable to the states through the fourteenth amendment. See *Benton* v. *Maryland*, 395 U.S. 784, 793–98, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Moreover, *Searles* did not involve inconsistent verdicts of any kind, but instead a situation in which a juror, during the announcement of the verdict, expressed to the court that the stated verdict was not the jury's true verdict.

[17] The jury also found Bravo guilty of a third crime that is not relevant to our analysis. *United States* v. *Fernandez*, supra, 722 F.3d 7.

[18] Our research has revealed only a few other cases that are worthy of mention. First, in a footnote, the United States Supreme Court in *Pipefitters Local Union No. 562* v. *United States*, 407 U.S. 385, 400 n.11, 92 S. Ct. 2247, 33 L. Ed. 2d 11 (1972), addressed a claim by certain petitioners that a special finding by the jury that a "willful violation of [the underlying criminal statute] was not contemplated amounted to an acquittal" because it was inconsistent with the jury's guilty verdict. The Supreme Court rejected this claim on the ground that the petitioners "not only failed to object to the trial court's requirement that the jury return a special finding as inconsistent with the general charge, but also failed to move for acquittal on the ground now offered once the special finding was returned." Id. After essentially declining to review this claim, the court, in dicta, indicated that even if the petitioners were correct that there was an inconsistency between the verdict and the special finding, the remedy would be a new trial, not an acquittal. Id., 401 n.11. This comment was made in dicta and devoid of (1) any accompanying analysis of whether the verdict and special interrogatory were in fact inconsistent and (2) any discussion of the relevant double jeopardy principles.

Accordingly, we conclude that it lacks precedential value on this topic.

Second, the decision of the United States Court of Appeals for the Third Circuit in *Crawford* v. *Fenton*, 646 F.2d 810 (3d Cir.), cert. denied, 454 U.S. 872, 102 S. Ct. 344, 70 L. Ed. 2d 178 (1981), a federal habeas action challenging a state prosecution, involved a scenario in which the jury's answers to special interrogatories arguably conflicted with a general verdict of guilty. Before the state court had taken steps to accept the verdict, it ordered the jury to resume its deliberations. Id., 813. Although the Third Circuit concluded that double jeopardy did not prevent the defendant's retrial after the state court had declared a mistrial when the jury could not ultimately arrive at a unanimous verdict, the federal appeals court did so on the basis of a double jeopardy claim different from the one presented here. In *Crawford*, the habeas petitioner contended that the state court had improperly declared a mistrial in violation of double jeopardy; id., 815–16; not because the jury had necessarily acquitted him as a result of its findings in a special interrogatory, but because he has a "valued right to have his trial completed by a particular tribunal." (Internal quotation marks omitted.) Id., 816. The Third Circuit in *Crawford* then recognized that double jeopardy prevents a second trial if a mistrial is declared because "the state, wishing to decrease the risk of an acquittal, desires the opportunity [of a second trial] to buttress weaknesses in [its] evidence . . . ." (Citation omitted; internal quotation marks omitted.) Id., quoting *Arizona* v. *Washington*, 434 U.S. 497, 507, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). Thus, *Crawford* is inapposite.

Finally, the Washington Court of Appeals, in *State* v. *Hurley*, 4 Wn. App. 781, 483 P.2d 1274, review denied, 79 Wn. 2d 1005 (1971), concluded that a guilty verdict was void because the jury's answer to an interrogatory negated one of the essential elements of the offense for which the jury returned a guilty verdict. Id., 783–84. Although the defendant requested that the court grant a motion for a judgment of acquittal, the Washington Court of Appeals determined that the appropriate remedy was a new trial. Id., 784. We decline to follow *Hurley* because it lacks any discussion of the relevant double jeopardy principles.

[19] We also take note of the United States District Court's decisions in *United States* v. *Lucarelli*, 476 F. Supp. 2d 163, 166 (D. Conn. 2007) (ruling on motion for judgment of acquittal or new trial) and *United States* v. *Lucarelli*, 490 F. Supp. 2d 295 (D. Conn. 2007) (ruling on motion for reconsideration on judgment of acquittal). In *Lucarelli*, the jury's general verdicts of guilt were arguably inconsistent with its answer to an interrogatory that the defendant had the specific intent to defraud, an essential element of the offenses upon which the jury found the defendant guilty. Although the court ultimately concluded pursuant to double jeopardy principles that the jury's answer to the interrogatories prevented the defendant's retrial, part of its reasoning was based on doubt regarding whether there was true inconsistency between the answer and the guilty verdicts in light of erroneous jury instructions of the specific intent to defraud element of the offenses. *United States* v. *Lucarelli*, supra, 476 F. Supp. 2d 169–70. In the absence of true conflict, the District Court concluded that the jury's explicit and unambiguous answer to the interrogatory constituted an adverse factual resolution of an essential element of the offense charged by the government and, thus, amounted to an acquittal for double jeopardy purposes. *United States* v. *Lucarelli*, supra, 490 F. Supp. 2d 301–302.

[20] In fact, the first note sent by the jury during deliberations asked whether intervening cause applied to all of the lesser included offenses.

[21] We note again that the court did not direct the jury to redeliberate on the charge of reckless driving alleged in count three. See footnotes 4 and 8 of this opinion.

[22] Similarly, no juror expressed any concern after the verdicts that the jury's initial answer to the interrogatory may have been incorrect. Indeed, after the jury resumed its deliberations, the jury attempted to reaffirm its initial answer to the interrogatory.

[23] On appeal, the court in *Thomas* noted that "[t]he [trial] court neither gave additional instructions nor directed the jury to deliberate only on the charge of assault [the charge for which a lack of unanimity was found]. Appellant raised no objection at that time to the course of action chosen by the court. Nor did appellant ask the court to record . . . a partial verdict on the three charges to which the foreperson had announced a verdict of not guilty." (Footnote omitted.) *Thomas* v. *United States*, supra, 544 A.2d 1261–62.

[24] Prior to sending this note to the court, the jury had sent another note

indicating that it was deadlocked and would not be able to reach a verdict on counts one and two. In response, the court provided the jury with a Chip Smith instruction and directed it to continue deliberating.

[25] In response to the second portion of the note, the court advised the jury that it could not provide a response because it did not understand the jury's question.

[26] This remark is particularly perplexing because it appears to suggest that the jury did not have the interrogatory before it. This possibility is itself problematic because the court had instructed the jury after rejecting the initial verdicts that it must resume deliberations on the verdicts and interrogatory.

[27] In this note, the jury also requested two other items. First, it requested a copy of the transcripts of the court's "comments and instruction to the jurors with regard to inconsistency of the verdicts given by the jurors dated [November 6, 2012]." Second, the jury requested "a copy of the original interrogatory statement completed by the jurors because it appears that it is worded differently." The court responded to the jury's first request by directing the court monitor to prepare and provide a copy of the requested portions of the court's instructions to the jury. With respect to the second request, the court advised the jury that the court had inspected the two interrogatories, found them to be worded identically, and directed the clerk to provide the jury with both of them.

[28] As explained previously in footnote 8 of this opinion, the defendant does not claim any error with regard to the guilty verdict returned on count three, and any instructional error is unrelated to that count.

--------